**STATE of Missouri, Respondent,**

**v.**

*Edward Jess ROUNDS, Appellant.*

**No. KCD 26114.**

Missouri Court of Appeals, Kansas City District.

Jan. 19, 1973.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 6, 1973.

William B. Bunch, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Kansas City, of counsel.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Before SHANGLER, C. J., and CROSS and DIXON, JJ.

DIXON, Judge.

Defendant was convicted by a jury of Burglary Second Degree and Stealing. From a jury imposed sentence of five years for burglary and three for stealing, defendant has appealed.

Defendant asserts error on three grounds. First, a claim he was denied a preliminary hearing; second, that the trial court improperly admitted statements made by the defendant to a jailer; and, third, that the trial court erred in improperly limiting the scope of cross examination of a witness for the State. The contentions will be considered in reverse order, the third point being the only point raised requiring a full factual review.

Bazil B. Hall owned a business on Prospect Avenue in Kansas City. Utilized in the business of Hall was one of two buildings on the premises. Prior to December of 1970, the defendant had occupied the other building, using it for an "automobile repair shop." After the removal of the defendant from this building, the owner, Hall, stored an Aristocrat boat and a commercially manufactured Rolce trailer in the building. The building was secured by a padlock. On Saturday, March 6, 1971, the building was locked. When Hall returned to his place of business Monday, March 8, 1971, the building had been "broken into the lock was gone," the door was "sagged open," and the boat and trailer were gone. The door bore physical evidence of a forcible entry described as "scuff marks" on the door facing. The original bill of sale and boat registration evidencing the ownership by Hall were received in evidence.

The proprietor of a resort on Table Rock Lake then related that the defendant brought a boat and trailer to his resort in the early morning hours on March 7, 1971. The resort operator knew defendant by the name of Jerry Haines. This boat and trailer were taken by police from the resort operator's possession in May of 1971. By serial number and from photographs, this boat and trailer were identified as the property of Hall.

When the defendant went to Table Rock Lake with the stolen boat and trailer, he was accompanied by a female named Pat Bartlett. She appeared as a witness for the State and said she had lived with the defendant from January to April, 1971. She asserted that the defendant moved into an apartment with the witness and her then husband, Leonard Joe Bartlett. When her husband "went to jail," she and the defendant then "lived together." She identified photographs of the Hall boat and trailer as being the boat and trailer the defendant had taken to Table Rock on March 7. She admitted she was with him on this trip. Pat Bartlett then established that the defendant had used the name, Jerry M. Haines, identified a driver's license in that name as one used by the defendant, and asserted she went with the defendant when he took the test to receive the driver's license in the name of Haines. She also identified an application for boat registration in the name of Haines as well as a trailer title for a homemade trailer in like name. The number shown on this title had been affixed to the Hall trailer by means of a tag issued by the Director of Revenue pursuant to the title issued in the name, Haines. She further identified an altered owner's title for the boat bearing the name, Haines, and the address of the witness' parents. All of these documents were recovered by the police from a file box belonging to the defendant and left at the home of the witness' parents. At the same time, the officers recovered parts of the boat. Pat Bartlett was present when the defendant damaged the boat and observed the removal of the damaged parts and identified the parts recovered from the defendant's car as the same parts. These parts were missing from the Hall boat when it was recovered.

■ The facts thus far related would have unquestionably supported the conviction of the defendant for both burglary and stealing. State v. Robb, 439 S.W.2d 510, l.c. 513 (Mo.Sup.1969), State v. Lewis, 482 S.W.2d 432, l.c. 434 (Mo.Sup.1972).

The State also offered testimony of the ex-husband of Pat Bartlett, Leonard Joe Bartlett. He was a convicted felon, and although not before the jury, the record shows he and the defendant had been engaged in criminal activities. The testimony given by him was repetitive of his ex-wife's on the bogus name used by the defendant. His only contribution of substance was his assertion that he accompanied the defendant to the place where the boat was stored, they looked at it through the window, and defendant said he was going to "get it." Defendant is also supposed to have said that if he did not have a key he would break the lock.

At the conclusion of this witness' testimony, the State had him admit his prior convictions. On cross examination of Leonard Joe Bartlett, the defense lawyer was reading from a paper and standing close by the jury. This occurred while defense counsel was examining the witness as to prior convictions. The State objected, and in the course of a colloquy at the bench, the defendant's counsel said he was going to question the witness on the sentences assessed for the four admitted convictions. The court said he would not permit this, although the State had made no objection to that line of inquiry. The defense never put the query to the witness. The record is, thus, in an unsatisfactory condition to consider defendant's claim of error, which is that the "sentences" of the witness were admissible to impeach him. Cited by the defendant is State v. Washington, 383 S.W.2d 518, l.c. 523 (Mo.Sup. 1964), which holds that when a defendant testifies, his sentence, as well as his conviction, may be shown. The State concedes this point as well as conceding further that there is a presumption of harmful error where the life or liberty of a citizen is at stake. The State argues, however, that the law of State v. Spencer, 472 S.W. 2d 404 (Mo.Sup.1971), and cases therein cited is that this presumption can be overcome by all the facts and circumstances.

State v. Spencer, supra, is a case where the court found reversible error because of the improper impeachment of a witness for the defendant. This conclusion seems appropriate for it could only be speculative to say that the jury would not have believed the State's witness absent the improper impeachment.

■ The instant case, however, is more like the situation in State v. Degraffenreid, 477 S.W.2d 57 (Mo.Sup. En Banc 1972), where the issue of harmless error on the admission of *cumulative* evidence is fully discussed. The real thrust of defendant's argument here is that the jury would have disbelieved Leonard Joe Bartlett's testimony if full impeachment had been permitted. Without resorting to speculation as to what a jury might or might not have believed, this case can be resolved by assuming what defendant implies that the jury did believe the witness. Even so assuming, no error is demonstrated. The only damaging fact elicited from this witness was the statement of the defendant's felonious intent inferable from his admission he would "get the boat." The jury finding of felonious intent does not rest alone on the inference of recent possession of stolen property in this case. The record here is replete with documentary evidence plainly proving such intent. When so considered, Leonard Joe Bartlett's testimony is purely cumulative and not prejudicial to the defendant.

■ The second point raised by the defendant concerns a claim that the court improperly admitted the statement of a jailer relating certain out-of-court statements by the defendant which were in violation of the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966). The difficulty with defendant's contention in this regard insofar

as he attempts to raise a constitutional question is that he does not set forth in his motion for a new trial any claim of constitutional violation in sufficient form to have preserved that error if there were any. The only thing testified to by this witness that remotely consists of a purported statement by the defendant are three lines in the transcript that read as follows:

"A   The conversation consisted of the defendant stated that he had returned to a former business of his, body shop, to obtain some, to recover some of his equipment and his boat.

Q   Did he tell you he did in fact recover the equipment and boat?

A   Yes, sir."

■   What this constitutes is, of course, an exculpatory statement by the defendant, and the entire transcript reveals that it was entirely voluntary on his part and not under any in-custody interrogation, therefore, not within the principle asserted by defendant under Miranda v. Arizona, supra.

The contention of defendant relating to the preliminary hearing arose on the morning of the trial. The defendant's counsel moved to remand the case to the Magistrate Court, contending that the defendant had not had a preliminary hearing on that portion of the charge relating to stealing.

In support of that motion, the defendant called the Chief Clerk of the Magistrate Court of the Third District of Jackson County where the proceedings were held.

The Clerk identified as Defendant's Exhibit 1 the file from the Magistrate Court and defendant offered it in evidence.

The court's original record (which consists of rubber stampings with additions of dates and signatures in handwriting) and the copy of the transcript forwarded to the Circuit Court are consistent and fair on their face.

These documents show the following relevant facts: Amended Complaint filed 8/16/71; Arraignment of Defendant 8/17/71; Preliminary Hearing held September 10, 1971 on charge of Burglary and Stealing and upon a finding of probable cause a binding over to the Circuit Court on the charge of burglary and stealing.

The difficulty arises from the testimony elicited from the Clerk by defendant's counsel. Her testimony is completely garbled. At one point she asserts that the record, which she had in her hands, showed an impossible date. At another juncture, she admitted the record was correct. Defendant argues, however, that her evidence shows that the defendant was afforded a preliminary hearing on burglary only.

■   The defendant's contention can be ruled by reference to his arraignment with the advice of counsel in the circuit court without raising the objection as to defects in the magistrate court procedure. State v. McNeal, 304 Mo. 119, 262 S.W. 1025 (1924). State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314 (1945). State v. Turley, 416 S.W.2d 75, l.c. 77 (Mo.Sup.1967). Likewise in both civil and criminal cases a record of a court which shows that a judgment is proper on its face, may not be impeached by extraneous evidence. Sisk v. Wilkinson, 305 Mo. 328, 265 S.W. 536 (In Banc 1924); Ex Parte Cloud, 18 S.W.2d 562 (Mo.App.1929); Miller v. Kamo Electric Cooperative, Inc., 351 S.W.2d 960 (Mo.App.1962). In Miller, supra, the court specifically held that interlineations contrary to the docket entry and certification by the magistrate would not justify attack on the jurisdiction of the Magistrate Court.

Since the defendant has urged the point on a factual basis, and the State failed to raise at trial or here the issue of waiver and the impropriety of impeaching the record by oral testimony, some review of the facts is appropriate.

■   Defendant's Exhibit 1 consists of all of the papers from the magistrate

court. There is a form complaint which has typewritten above the printed word "complaint", the word "amended" and which is signed by the Assistant Prosecutor, Sherry Randol. This is dated the 16th of August, 1971. Also appearing is a complaint form which is marked in handwriting "amended" and which is incomplete. It is a burglary second degree and stealing form completed only with respect to the charge of burglary and a portion of the stealing charge. This latter incomplete form is signed by Gerald Cox and attached to it is a statement of probable cause by Gerald Cox who is shown therein to be a detective and who asserts, on his affidavit, facts sufficient to authorize the issuance of a complaint for burglary and stealing. The warrant for arrest was issued on August 16, likewise, and it was shown to be for burglary second degree and stealing. The commitment, dated the 17th, shows that the defendant was committed upon a charge of burglary second degree and stealing *based upon the complaint of Sherry Randol,* as does the transcript and the court record, as has been indicated. It is apparent from a review of this entire file that the Clerk who testified she marked in her own handwriting one of the complaints "amended" obviously was in error in doing so. Detectives do not file amended complaints in ordinary circumstances, and a review of this entire record demonstrates that a partial complaint was executed by Detective Cox and thereafter, the Assistant Prosecuting Attorney, Sherry Randol, properly filed an amended complaint charging burglary second degree and stealing; that a warrant issued upon that amended complaint; the defendant was committed for preliminary hearing; the same was held, and he was bound over, all under the proceedings properly initiated by the *amended complaint of the Assistant Prosecuting Attorney.* There is no merit to the contention of the defendant and it is denied.

The judgment is affirmed.

All concur.