**STATE of Missouri, Plaintiff–Respondent,**

v.

**Ernest Richard JOHNSON, Defendant–Appellant.**

No. 27168.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 13, 2006.

Margaret M. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Ernest Richard Johnson ("Defendant") was convicted by a jury of forcible sodomy, a violation of Section 566.060.[1] The trial court followed the jury's recommendation and sentenced Defendant to a term of five years imprisonment. On appeal, Defendant contends that the trial court erred in allowing into evidence a condom found in Defendant's closet. We affirm.

Defendant does not contest the sufficiency of the evidence supporting his conviction. Viewed in the light most favorable to the verdict, the evidence presented at trial reveals the following.

Seventeen-year-old K.C. ("Victim") lived with her mother ("Pam"), her twelve-year-old sister ("S.C."), and her step-father, Defendant. On the morning of May 5, 2004, Victim awoke in her bedroom to find Defendant going through her belongings. Pam had already left for work and S.C. had stayed the night at a friend's house. Defendant was holding several letters written by Victim's boyfriend, and he began yelling at her accusing her of "having

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

sex" with her boyfriend. Defendant had also found a pornographic magazine in her bedroom. Victim denied having sex with her boyfriend and she asked Defendant to leave. Defendant told Victim that he did not believe her, and he "wanted to see for his self." Defendant began to remove Victim's clothing while she fought him and yelled for him to leave.[2] Amidst the struggle, Victim kicked, hit, scratched and bit Defendant. Despite Victim's efforts, however, Defendant was able to remove all of her clothes. He then began rubbing her breasts and told her that he was going to find out for himself if she was still a virgin. Defendant unzipped his pants and pulled them down. He then forced Victim's legs apart and inserted one of his fingers into her vagina. As Defendant continued to rub Victim's breasts and body, he told her that she had a perfect body and that she and her little sister were the only reason he was staying with Pam. Defendant eventually stopped, but he told Victim that he was going to come back next weekend when Pam and S.C. were gone and finish what he started. He also told Victim he was going to "f--k" her. Victim broke three acrylic nails in the struggle, which lasted approximately forty minutes.

After Defendant left Victim's room, she tried to call one of her friends, but the phone cord had been disconnected from the wall. Victim contacted a friend using her cell phone, and she was able to get a ride to school, where she told some friends what had happened. Victim left school after her first class and went to the Dallas County Sheriff's Office.

Victim met with Deputy Terry Gentry and told him what had happened that morning. She also gave a written statement. After officers had taken photo-graphs of Victim's injuries, she was taken to the hospital for an examination. Her pelvic examination was normal and the only injury they found on Victim was a zipper mark on her stomach.

At approximately 4:00 p.m. that same day, officers met Defendant at his home and he agreed to go to the Sheriff's office to talk about what had happened. After being advised of his *Miranda* rights, Defendant gave an oral statement, which was recorded. In his statement, Defendant said that he had held Victim's arms when she was trying to slap him, but he denied trying to rape her. Officers photographed Defendant's injuries consisting of bite marks, scratch marks and bruises around his chest, arms, neck and face. Defendant told officers that Victim had scratched him, but he said the other marks were horse bites from a few days before. Defendant also told officers that they would find a pornographic magazine and a folder containing letters from Victim's boyfriend on a shelf in his bedroom closet.

After receiving consent from Pam, officers searched her home. They found a folder belonging to Victim in Defendant's bedroom closet. The folder contained the letters Defendant was holding when he first entered Victim's bedroom as well as the pornographic magazine he had found. The officers also found a packaged condom under the folder. Defendant never used condoms when he and Pam engaged in intercourse, because Pam had a hysterectomy.

Defendant was subsequently charged with the felony of forcible sodomy, in violation of Section 566.060. Prior to trial, Defendant apologized to Pam and told her "you know, I never cheated on you except

---

**2.** Victim awoke still wearing her clothes from the day before: Capri pants, a top, bra and panties.

for this." He also told her that he was guilty but he hoped the jury would be lenient because he did not finish what he started. Defendant was tried before a jury and on June 3, 2005, he was found guilty of forcible sodomy. The jury recommended a sentence of five years imprisonment. The trial court followed the jury's recommendation and sentenced Defendant to five years in the department of corrections. This appeal followed.

In his sole point on appeal, Defendant argues that the trial court abused its discretion in allowing into evidence the condom found in Defendant's closet, because the condom was evidence of other bad acts and was not probative evidence concerning the charged offense. We disagree.

■ The trial court is vested with broad discretion in determining the admissibility of evidence, and we will not disturb its ruling absent a clear abuse of that discretion. *State v. Naasz*, 142 S.W.3d 869, 878 (Mo.App. S.D.2004). A trial court abuses its discretion where its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* "On direct appeal, this Court will review the trial court's determination not for mere error, but for prejudice and will reverse the conviction only if the error is so prejudicial as to deprive the defendant of a fair trial." *State v. Dismang*, 151 S.W.3d 155, 161 (Mo.App. S.D.2004).

Defendant argues that "evidence of one condom found in [his] closet was, if at all, of only marginal logical relevance, and not legally relevant, as it was extremely prejudicial and inflammatory." Defendant further states that there are no allegations that Defendant used a condom during the incident, "so its presence did not tend to prove a matter in issue." Defendant asserts that the introduction of the condom

coupled with Pam's testimony "painted the picture that [Defendant] was the type of person who might commit extramarital sexual acts because he had a condom in the closet even though he and Pam had never used them[.]"

■ "[A] criminal defendant has a right to be tried only for the offense for which he is charged." *State v. Johnson*, 161 S.W.3d 920, 924 (Mo.App. S.D.2005). Therefore, evidence of uncharged crimes or prior misconduct is inadmissible if it is offered for the purpose of showing a defendant's propensity to commit the crime with which he is charged. *State v. Estes*, 166 S.W.3d 119, 121 (Mo.App. E.D.2005). "Missouri courts have used this rule to exclude not only evidence of uncharged crimes but also evidence of noncriminal acts." *State v. Coutee*, 879 S.W.2d 762, 767 (Mo.App. S.D.1994). However, evidence of a defendant's prior misconduct is admissible if it is both logically and legally relevant. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). "Evidence is logically relevant if it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial. Evidence is legally relevant if its probative value outweighs its prejudicial effect." *State v. Barriner*, 34 S.W.3d 139, 144–45 (Mo. banc 2000) (internal citations omitted). "The balancing of the effect and value of evidence rests within the sound discretion of the trial court." *Bernard*, 849 S.W.2d at 13.

■ Generally, evidence of other uncharged crimes or prior misconduct is logically relevant when it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan, or the identity of the person charged. *State v. Beal*, 966 S.W.2d 9, 13 (Mo.App. W.D. 1997). "In addition, the so-called 'complete story' or *res gestae* exception pro-

vides for the admission of evidence necessary to provide a complete and coherent picture of the crime charged, the events leading up to it, or the circumstances surrounding it." *Coutee,* 879 S.W.2d at 767. Evidence of prior misconduct that does not fit any of the articulated exceptions may still be admissible if it is logically and legally relevant. *Bernard,* 849 S.W.2d at 13; *see also State v. Sladek,* 835 S.W.2d 308, 312 (Mo. banc 1992) (explaining that "evidence of the commission of an uncharged crime may prove motive or intent or another material fact, but in any event the evidence must have some legitimate tendency to directly establish the defendant's guilt").

 In this case, the condom was not offered for the purpose of showing Defendant's propensity to commit forcible sodomy, rather its admission was "necessary to provide a complete and coherent picture of the crime charged ... [and] the circumstances surrounding it." *Coutee,* 879 S.W.2d at 767. Therefore it is admissible under the *res gestae* exception. The condom was found in Defendant's bedroom closet near the folder containing items Defendant had confiscated from Victim's bedroom. The contents of the folder were the subject of Defendant's confrontation of Victim. Pam testified that Defendant had never used condoms when he had intercourse with her, because she had a hysterectomy. "The State may paint a complete picture of the crime charged and need not sift and separate evidence." *Coutee,* 879 S.W.2d at 768. The fact that Defendant had a condom, which he did not intend to use for intercourse with Pam, near items which Defendant had taken from Victim's bedroom was part of the complete picture of the crime charged.

 Additionally, we find that the condom is admissible because, aside from falling under the *res gestae* exception, it is both logically and legally relevant. *Bernard,* 849 S.W.2d at 13. The presence and location of the condom is logically relevant in that it had a legitimate tendency to directly establish Defendant's guilt. Victim testified that after her altercation with Defendant, he told her he would finish what he started the next weekend, and that he was going to "f--k" her. The presence and location of the condom is corroborative of Victim's testimony that Defendant had expressed to her an intention to have sex with her.

Our conclusion that the condom is logically relevant is supported by the court's decision in *State v. Baker,* 23 S.W.3d 702 (Mo.App. E.D.2000). In that case, the defendant appealed from his conviction for statutory sodomy, alleging *inter alia,* that evidence regarding his display of a condom was irrelevant and improperly admitted. *Id.* at 710. The court found that the evidence was relevant in that "[t]he trial court may have found the display of the condom to victim and defendant's accompanying remark that 'there [were] other things we [could] do' reflected the sexual and erotic nature of their relationship, and therefore had a logical bearing on whether deviate sexual intercourse was occurring." *Id.* at 711 (alterations in original). The court further explained that "testimony that defendant had carried and displayed a condom during a ride-along corroborated victim's testimony that defendant was prepared for and willing to engage in sexual encounters during working hours." *Id.* The court held that "[t]he trial court did not abuse its discretion in finding [such] testimony was relevant since it corroborated the testimony of the victim." *Id.*

Similarly, in the present case, the jury could have found that the condom and Defendant's accompanying remarks to Victim reflected the sexual nature of his intentions and therefore had a logical bear-

ing on whether forcible sodomy occurred during the altercation between Victim and Defendant.

 The evidence here is also legally relevant. As previously related, "[e]vidence is legally relevant if its probative value outweighs its prejudicial effect." *Barriner*, 34 S.W.3d at 144–45. Defendant argues that evidence of the condom coupled with Pam's testimony "diverted the jury's attention away from the matters at issue ... [and] painted the picture that [Defendant] was the type of person who might commit extramarital sexual acts[.]" We find nothing in the record indicating that the evidence misled or confused the jury, or resulted in undue prejudice to Defendant. Any prejudice to Defendant in this case can be attributed to the very probativeness of the challenged evidence. *See State v. Daugherty*, 823 S.W.2d 33, 35 (Mo.App. E.D.1991). "Defendant is not entitled to exclude evidence, merely because it damages his case." *Id.* "The balancing of the effect and value of evidence rests within the sound discretion of the trial court." *Bernard*, 849 S.W.2d at 13. The trial court did not abuse its discretion in determining that the probative value of the challenged evidence outweighed its prejudicial effect and was legally relevant.

Even if we had found that the admission of evidence relating to the condom was improper, it would not have required reversal in this case. "[We] review the trial court's determination not for mere error, but for prejudice and will reverse the conviction only if the error is so prejudicial as to deprive the defendant of a fair trial." *Dismang*, 151 S.W.3d at 161. "Where the presumption of prejudice from the erroneous admission of evidence is overcome by the strength of the overwhelming evidence of guilt, reversal is not mandated." *Beal*, 966 S.W.2d at 14. In addition to Victim's testimony, there was other evidence of Defendant's guilt, including physical evidence of the injuries he received during his altercation with Victim, and his admissions of guilt to Pam. The evidence supporting Defendant's conviction is overwhelming and the additional evidence relating to the condom is not so prejudicial as to deprive Defendant of a fair trial. Defendant's point is denied.

The judgment and sentence of the trial court is affirmed.

BATES, C.J., and BARNEY, J., concur.