**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Bryan McDANIEL,
Defendant/Appellant.**

**No. ED 89538.**

Missouri Court of Appeals,
Eastern District,
Division Two.

March 25, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 2008.

Application for Transfer Denied
June 24, 2008.

Brocca Leah Smith, Michael Freeman Jones—co-counsel, Clayton, MO, for appellant.

Shaun J. Mackelprang, Jayne T. Woods—co-counsel, Jefferson City, MO, for respondent.

BOOKER T. SHAW, Judge.

Bryan McDaniel appeals his jury convictions and corresponding sentences totaling 13 years for first-degree trespass, attempted assault in the first degree, armed criminal action, and attempted burglary in the first degree. On appeal, McDaniel contends that the trial court erred in (1) overruling his motion for acquittal on the attempted assault charge due to insufficient evidence, (2)(a) overruling his objection to the State's reference to McDaniel's tattoos during closing arguments, (2)(b) failing to declare a mistrial during closing arguments because the State encouraged the jury to "send a message," and (3) failing to declare a mistrial due to the State's references to McDaniel's use of a racial slur. The judgment is affirmed.

### Facts

Viewed in the light most favorable to the verdict, the facts are as follows. On September 20, 2005, McDaniel rang the doorbell of one of his apartment building neighbors, Adrian Hudson, who resided there with his girlfriend, Cindy Green, their 10–month old baby, and Cindy's sister, Jazimine. Hudson opened the door, and McDaniel, holding out a handful of paper trash, complained that Jazimine had littered on or near the complex. Hudson denied that the litter belonged to anyone in his unit. The discussion escalated between the two, standing there in the threshold of the apartment. Papers were thrown and kicked, Hudson's shoe came off, McDaniel hit Hudson in the face with it, and Hudson swiped at McDaniel with a knife, cutting McDaniel's hand. Hudson and Green eventually managed to close and lock the door.

McDaniel disappeared briefly, returned with a fully-loaded semi-automatic assault rifle, cocked it with the safety off, his finger on the trigger, and began yelling infinite variations on the theme, "I'm going to get you, nigger! I'm going to kill you, nigger! Fuck you, nigger! You're dead!" McDaniel kicked on the door hard enough to shake the walls and pass light through the doorframe. He punched the door hard enough to break his own hand. Hudson and Green braced the door with a chair and called 911. A neighbor likened McDaniel's actions to that of a SWAT team attempting to breach an entryway. That same neighbor also called 911 and later testified, "I thought I was going to witness a murder."

At some point McDaniel placed his weapon against a nearby banister. He explained during cross-examination that he couldn't hold the gun and pound on the door at the same time. When the police arrived, McDaniel was holding the rifle, pacing, and still shouting the aforementioned obscenities.

### Discussion

*Point I—Sufficiency of Evidence*

■ McDaniel contends that the trial court erred by overruling his motion for

acquittal on the attempted assault charge because the evidence did not demonstrate that he took a substantial step to commit the actual assault. Our standard of review is whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt, accepting all evidence favorable to the State and disregarding all evidence and inferences to the contrary. *State v. Hopson*, 168 S.W.3d 557, 561 (Mo. App. E.D.2005).

A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person. Section 565.050 RSMo 2000. A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. Section 564.011. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. *Id.*

McDaniel cites *Verweire v. Moore*, 211 S.W.3d 89 (Mo.2006), where the Supreme Court of Missouri found insufficient evidence of a substantial step when the defendant pointed a pistol at the victim and threatened to pull the trigger but then retreated voluntarily. There, the Court was careful to note, "This is not a case like those in which the defendant was convicted because he would have injured the victim but for the malfunctioning of his weapon or the *intervention of law enforcement.*" *Id.* at 92. (emphasis added) By contrast, McDaniel's actions, accompanied by his relentless and unambiguous threats, were sufficient to lead a reasonable trier of fact to conclude that he was taking substantial steps and would have persisted, but for the police, until he successfully entered the apartment and caused serious injury to its inhabitants. Point I is denied.

*Point II—Prosecution's Statements During Closing Arguments*

█ McDaniel alleges two trial court errors during closing arguments. First, he asserts that the court erred by overruling his objection when the State referred to him as "tattoo man" because the characterization was prejudicial. Second, McDaniel faults the court for not declaring a mistrial *sua sponte* when the State urged the jury to "send a message" because it incited the jury's emotions.

As a preliminary matter, the State invites this Court to dismiss this point for multiple preservation defects. Indeed, McDaniel alleges two distinct errors within the same point in violation of Rule 84.04(d). Moreover, neither point was properly preserved in the trial court. McDaniel objected to the tattoo reference at trial but failed to include it in his motion for a new trial as required by Rule 29.11(d). And McDaniel never objected to the State's suggestion that the jury send a message. Additionally, McDaniel raises a new argument in the text of his brief— regarding the State's description of him as a narrow-minded bigot—which he failed to articulate in the point relied on in violation of Rule 84.04(e).

McDaniel urges the Court to exercise its discretion to look past the procedural flaws and review his point(s) for plain error. Assertions of plain error in closing argument are generally denied without explanation, and relief will be granted only where the defendant demonstrates that the improper remarks had a decisive effect on the verdict. *State v. Taylor*, 216 S.W.3d 187, 194 (Mo.App. E.D.2007). Faced with this standard, we see no reason to exercise our discretion here. Point II is dismissed.

*Point III—State's References to McDaniel's Racial Epithet*

Lastly, McDaniel maintains that the trial court erred by failing to declare a mis-

trial *sua sponte* due to the State's questions and references throughout the trial regarding McDaniel's repeated use of the word "nigger." McDaniel complains that he suffered prejudice because the word inflamed the jury.

Initially, the State invites us to dismiss this point, too, for non-preservation in that McDaniel only objected to the State's use of the term in its charging document. McDaniel did not object to subsequent references during the State's opening statement, examination of witnesses, and closing argument. Moreover, McDaniel failed to allege this error in his motion for a new trial as required by Rule 29.11(d). McDaniel explains that the trial court sustained his initial objection based on the potential for prejudice, so he was not required to make a continuing objection, as both the State and the court understood that McDaniel's intent was to exclude the word from the jury's collective ear. McDaniel cites *State v. Baker*, 103 S.W.3d 711, 717 (Mo.2003), where the Supreme Court acknowledged the validity of a continuing objection despite counsel's indication of "no objection" during trial. There, however, counsel had requested a continuing objection, so all parties, including the judge, understood counsel's statement to mean "no further objection." Here, by contrast, clearly the State did not share McDaniel's understanding of the scope of his objection, given its frequent references to the term throughout the trial. The onus was on McDaniel, not the trial court, to renew the objection, but instead he remained silent. Additionally, in *Baker*, counsel raised the issue in his motion for a new trial, whereas, here, McDaniel did not.

■ Even reviewing the point for plain error, we find none. McDaniel cites no precedent requiring a trial court to declare a mistrial *sua sponte* under similar facts.

In *State v. Miller*, 680 S.W.2d 253 (Mo. App. E.D.1984), counsel moved for a mistrial after a witness gave unsolicited inadmissible testimony. McDaniel made no such motion here despite the State's frequent references to his own use of a racial slur that he now claims is prejudicial to *him*.

Perhaps seeing the irony of McDaniel's complaint, the State rejects his presumption that the epithet's prejudice (to McDaniels) outweighs its probative value. According to the State, McDaniel's use of the abhorrent word in question is highly relevant to demonstrate McDaniel's acute animosity toward the victim and his clear motive and intent to do harm. Any prejudice McDaniel may have suffered from the admission of his own epithets at trial "can be attributed to the very probativeness of the challenged evidence." *State v. Johnson*, 201 S.W.3d 551, 557 (Mo.App. S.D. 2006). A "[d]efendant is not entitled to exclude evidence merely because it damages his case." *Id.*

While the trial court recognized some potential for prejudice when it ruled on McDaniel's initial objection regarding the charging document, the court also retained its discretion to balance the effect and value of the evidence throughout the trial and apparently concluded that it was quite probative. Allowing the trial to proceed was within the trial court's broad discretion, particularly in the absence of any objection or motion by McDaniel.

### Conclusion

The judgment of the trial court is affirmed.

PATRICIA L. COHEN, P.J., and KURT S. ODENWALD, J. concur.