

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD35543
)
ROBERT EDWARD SMITH, ) **Filed: June 28, 2019**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Judge David C. Jones

**AFFIRMED WITH INSTRUCTIONS**

Robert Edward Smith ("Defendant") appeals his convictions, after a jury trial, of one count of domestic assault in the second degree under § 565.073 and one count of domestic assault in the third degree under § 565.074.[1] Defendant alleges that the trial court abused its discretion when it denied Defendant's motion to compel a health care facility to disclose a witness's mental health records, or, in the alternative, to conduct an *in camera* review of those records. For the reasons explained below, we affirm

---

[1] Unless otherwise noted, all statutory citations are to RSMo 2000 as amended through 2015.

Defendant's convictions, but remand to correct a clerical error in the trial court's written judgment.[2]

## Statement of Facts

Considering the facts in the light most favorable to the verdict, the following evidence was adduced at trial as is relevant to this appeal. J.C. ("Victim") was in a relationship and lived with Defendant for almost a year. During the afternoon or evening of June 6, 2016, there was an argument, Defendant pushed Victim down, got on top of her and choked her. After she got back up, he pushed her down a second time, she got up again, and he "came after [her] with a knife." Victim "held up [her] arm to protect [herself,]" and the knife cut her dominant right arm. She wrapped up her arm with a towel and the police were called. The cut left a 2-3 inch scar on Victim's arm and marks were found on her throat.

Defendant's theory at trial was that Victim had mental health problems and her injuries were self-inflicted, specifically, that she was "a cutter." Prior to trial which began on February 1, 2018, Defendant filed two pre-trial motions on January 25, 2018 related to Victim's mental health records: (1) a motion for a court order compelling the production of Victim's mental health records for the period of time from January 1, 2015 to July 31, 2015;[3] and (2) a motion to compel "an [*in camera*] review of records and subpoenas duces tecum filed by the Defendant on the Custodian of Records for Cox

---

[2] Defendant raised this issue in his brief as point 2, but we choose to address this solely as a scrivener's error.

[3] Defendant's motion to compel purported to compel the State to produce the requested records, but it directed that the records request be made to the Custodian of Records for Cox Medical Center along with a signed authorization. Defendant did not allege that the State had possession of these records. Cox Medical Center had orally refused to divulge Victim's records without a court order.

Medical Center."[4]  The State opposed these motions, noting that Defendant had not alleged any specific facts to show how the mental health records were relevant. Defendant filed amended suggestions on January 30, 2018 in support of his request ("amended suggestions").

After oral argument, the trial court denied Defendant's motions on January 30, 2018.  The trial court's order stated that the court "finds that the records which Defendant [asks] to have reviewed are privileged records and protected by the provisions of RSMo § 491.060.  As such, Defendant's motion for *in camera* review is denied."

A jury found Defendant guilty of domestic assault in the second degree (count 1) and domestic assault in the third degree (count 2).  As to count 1, the court orally sentenced Defendant to 12 years in the custody of the Department of Corrections, and as to count 2, he was orally sentenced to one year in the county jail with that sentence to run concurrently.  Defendant was sentenced as a prior and persistent offender. Defendant timely filed this appeal.

## Standard of Review

Because Defendant's point relates to the trial court's decision not to compel the production of Victim's medical records as part of discovery, it is subject to an abuse of discretion standard of review.  ***State v. Taylor***, 134 S.W.3d 21, 26 (Mo. banc 2004); ***State v. Donovan***, 539 S.W.3d 57, 69 (Mo. App. E.D. 2017).  The purpose of discovery

---

[4] At the pre-trial hearing where the court took up Defendant's motions, Defendant told the court that Cox Medical Center had indicated that they planned to move to quash the subpoena duces tecum, but that they had not yet done so.  The return date for the subpoena duces tecum was the day after the pre-trial hearing.  In anticipation that Cox Medical Center would not produce the records, Defendant had filed his motion to compel.  In anticipation that his motion to compel would be overruled, Defendant had filed his motion for an *in camera* review.

is to provide a defendant with a "decent opportunity to prepare in advance for trial and avoid surprise." ***State v. Tisius***, 92 S.W.3d 751, 762 (Mo. banc 2002) (quoting ***State v. Mease***, 842 S.W.2d 98, 108 (Mo. banc 1992)). "[T]he focus of a denial of discovery is whether there is a reasonable likelihood that denial of discovery affected the outcome of the trial." ***Id.*** If a defendant claims he was denied meaningful discovery, the standard for review is whether the trial court abused its discretion such that it results in fundamental unfairness. ***Id.*** "Fundamental unfairness occurs when the state's failure to disclose results in defendant's genuine surprise and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence." ***State v. Julius***, 453 S.W.3d 288, 296 (Mo. App. E.D. 2014) (quoting ***State v. Artis***, 215 S.W.3d 327, 337 (Mo. App. S.D. 2007)). If reasonable persons can disagree as to whether the trial court acted correctly or not, then the trial court did not abuse its discretion. ***Donovan***, 539 S.W.3d at 69.

## Analysis

Defendant claims that the trial court abused its discretion when it denied his motions requesting the court to order the disclosure of Victim's mental health records, or for the trial court to conduct an *in camera* review of those records. A review of those records was "necessary to determine whether [Victim] had engaged in self-harm through cutting" because the "main theory" of his defense was that Victim, not Defendant, had harmed herself. Defendant argues that after the trial court determined that the information he sought was privileged, "the trial court was required to make a determination of whether [Defendant's] need for the information outweighed [Victim's] interest in confidentiality" and any requirement that a defendant provide "some other

4

actual evidence of the fact he needs the records in question" would "foreclose[] the use of privileged records to aid in a criminal defense."

For pre-trial discovery disputes, "a trial court is required to balance the State's interest in preserving the confidentiality of records that may contain privileged information, such as medical and psychiatric records, with a defendant's right to a fair trial." *Julius*, 453 S.W.3d at 296. The court in *Julius* also noted that:

> When a defendant seeks potentially privileged information, the proper procedure for protecting confidentiality and the defendant's due process rights is for the trial court to conduct an *in camera* review to determine whether the records are actually privileged and, if so, whether, under the circumstances of the case, the asserted privilege should yield to the defendant's specific need for the evidence.

*Id.*

First, under § 491.060, Victim's medical records are clearly privileged.[5] *See State ex rel. Phillips v. Hackett*, 469 S.W.3d 506, 508 (Mo. App. S.D. 2015) (observing that psychological treatment records are privileged under § 491.060(5)). If the records are privileged, then "to be entitled to an *in camera* review, the requesting party must make an adequate showing." *Artis*, 215 S.W.3d at 337. The "mere possibility" that the potential information might be helpful is not sufficient, but "a defendant must allege specific facts showing how the information is both favorable and material." *Julius*, 453 S.W.3d at 296-97. Evidence is material if there is a reasonable probability that, had it been disclosed to the defense, then the "result of the proceeding would have been different." *Id.* at 297 (quoting *State ex rel. White v. Gray*, 41 S.W.3d 460, 464 (Mo. App. W.D. (2004)).

---

[5] Section 491.060(5) "is construed as a privilege statute" and it "applies to medical records and all aspects of discovery." *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566-67 (Mo. banc 2006).

In his amended suggestions, Defendant asserted the following facts in support of his motion for an *in camera* review of the requested records: (1) Victim stated in her deposition that "people were watching her[,]" which Defendant characterized as Victim's mental condition of paranoia; (2) Victim stated in her deposition that she had threatened to commit, and had attempted, suicide; (3) Defendant had stated, in an ex parte order of protection he had filed the day *after* the incident, that Victim was "a cutter." Further, Defendant was "aware of at least one hospital stay during [January 1, 2015 to July 31, 2015] when [Victim] was in the Cox Mental Health Department." Defendant stated that he was "attempting to acquire records showing specific instances of cutting that should be found" in these records, without which "defense counsel would be unable to impeach [Victim.]" Defendant also asserted that he "knows the records exist because he had significant contact with [Victim] during this time frame." He asserted that he had "narrowly tailored his request to only that which is required to be properly prepared for and not surprised at trial." When taken "as a whole," Defendant asserted that these statements provided a basis for an *in camera* review of Victim's records.

In **Taylor,** the defendant sought an *in camera* review of a witness's mental health records to determine whether they were relevant to the issue of the witness's competency. 134 S.W.3d at 26-27. The court held that the "*mere possibility*, not supported by fact, that the records . . . *might* contain evidence concerning [the witness's] competence" was insufficient to render the court's decision denying discovery to be an abuse of discretion. **Id.** (emphasis added). Similarly, in **State v. Seiter**, a defendant requested access to otherwise privileged records because these records might contain evidence that would "possibly" be exculpatory and impeaching. 949 S.W.2d 218, 221

(Mo. App. E.D. 1997).  The court found this "mere possibility" was insufficient, and that the defendant "did not present specific facts to establish what information was contained in the records and how such information would be favorable to him."  ***Id.***  He also "made no showing of the relevancy, materiality, and exculpatory nature of the information he sought" from the records.  ***Id.***  In ***Seiter***, to the defendant's contention that the trial court should have *sua sponte* conducted an *in camera* review to determine the relevancy of the records, the court found that this type of review was only necessary if "defendant set forth a factual predicate to justify such a review[,]" which he did not do. ***Id.*** at 221-22.

The question in this case is whether Defendant presented specific facts as to how the information contained in Victim's mental health records would be "material and favorable" sufficient to require an *in camera* review, and not just the "mere possibility" that the information contained in the records would be relevant or exculpatory.  *See* ***State v. Davis***, 186 S.W.3d 367, 372 (Mo. App. W.D. 2005) (quoting ***Taylor***, 134 S.W.3d at 26).

Defendant asserts that his amended suggestions provide the factual basis to require an *in camera* review.  We disagree.  Defendant's assertions fail to meet the threshold requirement because they "only reflect[] a generalized claim that the files would contain relevant material and possible exculpatory statements[,]" ***id.***, and lack requisite supporting facts.  S*ee* ***Taylor***, 134 S.W.3d at 26-27.  Since Victim admitted in her prior deposition and at trial that she had previously attempted suicide by taking pills, her mental health records were not necessary to impeach her on this point. Victim's alleged paranoia of being watched and previous suicide attempts are, at most, evidence that Victim had potential mental health issues but not that she is a cutter.  The

only specific evidence of Victim's purported history of "cutting" comes from Defendant's own statements which included that "[Victim] is a cutter." The court did not have to credit Defendant's self-serving assertions.

Defendant's lack of factual assertions supported by additional evidence distinguishes this case from those cases where courts have found that an *in camera* review of privileged records was required. *See, e.g., Davis*, 186 S.W.3d at 372-73 (holding that an *in camera* review of psychological counseling records should be conducted where the defendant cited to inconsistent statements the witness had provided to other people and witness's diary entries); *State v. Newton*, 925 S.W.2d 468, 470-72 (Mo. App. E.D. 1996) (remanding the case for an *in camera* inspection of witness's psychological records where the witness "may have experienced hallucinations" at the time of the crime and where defendant presented testimony from others that witness "had a bad reputation for truthfulness and honesty"). Defendant failed to present any evidence of specific inconsistencies in Victim's testimony to substantiate his claims, *see Davis,* 186 S.W.3d at 372-73, or that Victim had a reputation for deceit, *see Newton*, 925 S.W.2d at 470. Rather, Defendant relies solely on *his own* statements and alleged knowledge of Victim's past self-harm by cutting, without other supporting evidence.

Accordingly, Defendant has failed to make a "plausible showing" of how the information he requested would have been material and favorable to him. *See Taylor*, 134 S.W.3d at 36 (quoting *State v. Goodwin*, 65 S.W.3d 17, 21 (Mo. App. S.D. 2001)). This requirement is necessary so that the pursuit of the privileged information is "not merely a desperate grasping at a straw." *Davis*, 186 S.W.3d at 372 (quoting *State ex rel. St. Louis County v. Block*, 622 S.W.2d 367, 372 (Mo. App. E.D. 1981)). We hold

8

that the trial court's decision to deny the Defendant's motion to compel disclosure or, in the alternative for an *in camera* review of the requested records, was not an abuse of discretion. Defendant's point is denied.

We note that the trial court's judgment contains a clerical error that mislabels Defendant's count 2 conviction as a class D felony instead of a class A misdemeanor. At the sentencing hearing, the court recognized Defendant's count 2 conviction as a class A misdemeanor, and orally sentenced Defendant to one year in the county jail on count 2. The amended judgment signed on May 25, 2018 erroneously listed the count 2 charge as a class D felony. In a criminal case, clerical errors in the sentence and judgment "may be corrected by an order *nunc pro tunc* if the written judgment does not reflect what actually was done." **State v. Moore**, 518 S.W.3d 877, 889 (Mo. App. E.D. 2017); *see* Rule 29.12(c).[6] A *nunc pro tunc* order can be used to make a correction "[i]f there exists in the record a basis to support an amendment to the judgment and the trial court's intentions regarding the defendant's sentence are clear from the record[.]" **Id.** *See also* **State v. Lemasters**, 456 S.W.3d 416, 425-26 (Mo. banc 2015) (holding that a *nunc pro tunc* order was appropriate where the written judgment did not accurately reflect what happened during a trial and subsequent sentencing).

Because the court's oral pronouncement was correct but a clerical error was made in the judgment, we must remand this case with instructions to the trial court to enter an amended written judgment to correct the count 2 conviction to reflect a class A misdemeanor of domestic assault in the third degree by way of a *nunc pro tunc* order.

---

[6] All rule references are to Missouri Court Rules (2019).

## Conclusion

The trial court's judgment is affirmed.  We remand with instructions solely to amend the judgment to reflect Defendant's count 2 conviction of a class A misdemeanor.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – CONCURS

WILLIAM W. FRANCIS, JR., P.J. – CONCURS